IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER M. SWANSON,

                         Plaintiff,

      v.

ANDREW M. SAUL, Commissioner of
Social Security,

                       Defendant.

OPINION AND ORDER

19-cv-1016-wmc

Pursuant to 42 U.S.C. § 405(g), plaintiff Christopher M. Swanson seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Swanson raises two core challenges in this appeal: (1) the ALJ erred in evaluating whether Swanson met the requirements of Listing 1.04(A); and (2) the ALJ erred in discounting Swanson's account that he could not sit for more than 90 minutes at a time in crafting Swanson's residual functional capacity. For the reasons that follow, the court rejects these challenges and will affirm the Commissioner's denial of benefits.

BACKGROUND[1]

**A. Overview**

Plaintiff Christopher M. Swanson has at least a high school education and he has past work experience as an industrial truck operator, general farmworker, salvage laborer and industrial cleaner -- all of which Swanson performed at a heavy exertional level. (AR

---

[1] The following facts are drawn from the administrative record ("AR"). (Dkt. #5.)

25-26.)  Swanson last engaged in substantial gainful activity on June 1, 2015, the same date as his alleged onset disability date.

Swanson applied for social security disability benefits and supplemental security income on May 25, 2016, claiming an alleged disability onset date of June 1, 2015, in both of his applications.  With a birth date of February 23, 1978, Swanson was 37 years-old on his alleged disability onset date, which is defined as a "younger individual."  20 C.F.R. § 416.963.   Swanson claimed disability based on lumbar spondylosis, lumbosacral spondylosis, lumbar stenosis, meralgia paresthetica, chronic back pain, hypertension, hypothyroidism, obesity, difficulty standing, walking and sitting, and ADHD.  (AR 76-77.)

**B.  ALJ Decision**

ALJ Nicholas Grey held a video hearing on October 30, 2018, at which Swanson appeared personally and by counsel, Max Lindsey, who is also representing him in this appeal.  On January 14, 2019, the ALJ issued an opinion finding that Swanson had not been under a disability from June 1, 2015, through the date of the opinion.

The ALJ concluded that Swanson suffered from the following severe impairments: lumbar degenerative disc disease, obesity, right shoulder tendinopathy, partial left rotator cuff tear, and right carpal tunnel syndrome.  (AR 17.)  In making this determination, the ALJ concluded that a number of other impairments were not severe, but none of these determinations are material to plaintiff's appeal.  (AR 17-18.)

Next, the ALJ considered whether Swanson had an impairment or combination of impairments that met or medically equaled one of the listed impairments.  Material to Swanson's appeal, the ALJ determined that Swanson did not meet Listing 1.04 (disorders

of the spine) because "there is not evidence of neurological motor loss in the record." (AR 18.) The ALJ also rejected Listing 1.04 because "there is no arachnoiditis established by biopsy or imaging or the required spinal stenosis resulting in pseudoclaudication established by findings and imaging that results in loss of ability to ambulate effectively." (*Id.*) Finally, the ALJ noted that Swanson "uses no ambulatory aids, has no muscle atrophy or sustained neurological motor strength loss as described below." (*Id.*)

In addition, the ALJ determined that Swanson had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," except for additional exertional limitations that are also not material to this appeal. In arriving at his RFC, the ALJ further considered Swanson's various medical impairments and chronic pain, and specifically noted Swanson's written reports that "his conditions affect his ability to sit or stand more than 20-30 minutes before needing to change positions, walk more than a block, and [use] his hands although he testified he could sit for an hour with discomfort and an hour and a half maximum." (AR 19.) Ultimately, the ALJ concluded that limiting Swanson to sedentary work would largely accommodate his "subjective functioning complaints," but to the extent not accommodated, he found that "[t]he objective clinical findings and associated course of treatment below are only partially consistent with the claimant's subjective allegations of the intensity, frequency, and limiting effects of his symptoms." (AR 20.)

In arriving at these findings, the ALJ reviewed Swanson's medical record in some detail, beginning with a May 28, 2015, consultative examination report by Dr. Johnson and ending with October 2018 physical therapy records for Achilles tendonitis. (AR 20-

23.)  As part of that recovery, the ALJ recounted records of physical examinations, MRIs and other tests, medication and steroid injection to manage pain and physical therapy for back pain, neck and shoulder pain and carpal tunnel syndrome.  (*Id.*)  While the court addresses those records where relevant below, the ALJ concluded in summary that:

> Clinically, the findings support the residual functional capacity.  Imaging shows a progressive spinal condition with nerve root irritation manifested by a radiculopathy, motion limitations, and intermittently antalgic gait.  He also has core weakness with morbid obesity that it improving (5F/34).  Imaging also shows bilateral shoulder impairments and he has a positive impingement sign.  Nerve testing confirms peripheral neuropathy and there are suggestions of a possible diabetic neuropathy.  Exertion, posture, hazard, climbing, reaching and hand use deficits are accommodated.

(AR 23.)

Central to plaintiff's appeal, the ALJ specifically rejected Swanson's "reports of a need to lie down" because "physical therapy sessions in 2018 lasted 60 minutes without mention of pausing sessions so claimant could lie down (11F/2)."  (AR 24.)  The ALJ also dismissed a medical note that "the claimant was lying on the floor" when the doctor entered as what "appears to be an outlier," because other records "indicate that he could still ambulate and function."  (*Id.*)  The ALJ similarly noted the conservative nature of his treatment, specifically observing with respect to his back pain that "[h]e is a candidate for back surgery with additional weight loss, but here again the claimant had only conservative weight loss measures despite the offer of surgical referral (2F/6; 3F/8)."  (*Id.*)

The ALJ relied on other medical notes indicating that Swanson's activities are not consistent with his ability reports, including:  (1) the May 28, 2015, consultative examination report in which Swanson reported an ability to lift 75 pounds; and (2) an

August 2016 note in which he reported lifting 2–3 split logs at a time and carrying two three-gallon water jugs weighing up to 48 pounds.  (AR 24.)  The ALJ also reviewed reports of activities that exceed the sedentary exertion level, including vacuuming, doing laundry, home maintenance, yard work, among others.  (*Id.*)  The ALJ acknowledged Swanson's testimony that "these chores are smaller than they might sound on paper, and that he breaks them up."  (AR 25.)  Still, he found Swanson's report "by itself fails to demonstrate incapacity for a significantly lesser exertion activity on a sustained basis."  (*Id.*)

As for the medical opinion testimony, the ALJ placed "partial weight" on those of the State Agency medical consultants, finding that the final opinion limiting Swanson to sedentary (as opposed to an earlier finding that he could perform light work) "more accurately represents that claimant's physical findings of intermittently antalgic gait, morbid obesity, and multilevel degenerative disc disease with restricted range of motion of the trunk."  (AR 25.)  The ALJ similarly rejected plaintiff's testimony and written reports of "discomfort/pain with prolonged sitting," relying on the State Agency consultant's opinion that "the claimant can sit about 6 hours out of eight based on the record at hand and no treating provider has opined to the contrary."  (*Id.*)

Based on his RFC, the ALJ determined that all of plaintiff's past relevant work "require[d] exertion abilities beyond the claimant's current residual functional capacity, both as the claimant performed the work and as described in the Dictionary of Occupational Titles," but in light of the testimony of the vocational expert, concluded that there were still jobs in significant numbers in the national economy that the claimant can

perform, including call out operator, document preparer and charge account clerk.  (AR 26-27.)  Based on this conclusion, the ALJ found that Swanson was not disabled.


OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled.  Findings of fact are "conclusive," so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner.  *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).  At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Plaintiff raises two, core challenges to the Commissioner's final decision:  (1) the ALJ erred in evaluating whether Swanson met the requirements of Listing 1.04(A); and (2) the ALJ erred in discounting Swanson's ability to sit for more than 90 minutes at a time.  The court will address each challenge in turn.

## I.  Listing 1.04(A)

"An impairment that manifests only some of [the required] criteria, no matter how severe, does not qualify."  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Listing 1.04(A), requires a disorder of the spine (such as degenerative disc disease) that compromises a nerve root or the spinal cord resulting in:

> [e]*vidence of nerve root compression characterized by* neuro-anatomic distribution of pain, limitation of motion of the spine, *motor loss* (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § 404, subpt. P, app. 1, § 1.04(A) (emphasis added).  As described above, the ALJ concluded that Swanson did not meet this Listing because "there is no evidence of neurological motor loss in the record."  (AR 18.)

Despite this finding, plaintiff contends on appeal that "the record is replete with reference to neurological motor loss."  (Pl.'s Opening Br. (dkt. #9) 2.)  In support, plaintiff summarizes the following evidence from the official transcript of the record:

> Plaintiff had a bilateral positive straight leg test (T. at 640); diminished 1+ deep tendon reflexes bilaterally on his knees and ankles (T. at 644); diminished 1+ deep tendon reflexed bilaterally on biceps and triceps (T. at 656); decreased sensation in L4 and L5 dermatomes (T. at 586);  motor loss is noted as decreased -5/5 strength in left latissimus dorsi and left deltoid (T. at 656); ankle strength is limited 3+/5 right and 4-/5 left, hip extension 5/-5 bilaterally, and hip adduction and abduction 4/5 bilaterally (T. at 670-680).

(*Id.* at 2-3.)[2]

---

[2] Plaintiff's references to "T." equate with the court's citations to "AR" in this opinion.

In response, however, the Commissioner argues that plaintiff is simply pointing to "intermittent abnormal examination findings," which does not satisfy the Listing. (Def.'s Opp'n (dkt. #11) 9.) In particular, the Commissioner quotes 20 C.F.R. 404, Subpt. P, App. 1.00(d) for the proposition that "[b]ecause abnormal findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." (*Id.*) Finally, the Commissioner directs the court to findings in the record from May 2015 through January 2017, noting no muscle weakness and no muscle atrophy. (*Id.* (citing AR 20-23, 356, 372, 379, 747.)[3]

In his reply, plaintiff argues that the 2018 findings quoted above were *not* intermittent, but rather show a progression of his condition, with the Listing satisfied by 2018.[4] In support, a May 2018 examination notes diminished strength in the left latissimus dorsi and left deltoid and diminished 1+ deep tendon reflexes in the biceps and triceps, but reflects normal strength, sensory and reflexes in the lower extremities. (AR

---

[3] Defendant also argues that plaintiff fails to meet the other elements of Listing 1.04(A), but the ALJ did not articulate any of these bases in finding that Listing 1.04(A) was not met. As such, the court declines to consider these other arguments. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

[4] As plaintiff likely recognized in his reply, *some* of his citations to the transcript also fall short of satisfying the motor loss element. For example, plaintiff points to an April 2017 medical note, describing a "straight leg raising positive bilaterally." (AR 586.) The straight leg test is not part of the motor loss element of Listing 1.04(A), although it is relevant to another element. More critically, this same record also described normal motor strength and senses. Plaintiff also relies on a June 2017 record, describing "[k]nee reflex bilaterally 1+" and "[a]nkle reflex bilaterally 1+" (AR 644), ignoring that this same record describes *normal* motor and sensory examinations.

656-57.)[5]  Plaintiff similarly attempts to draw from his physical therapy records from September and October 2018, but while these records show diminished ankle strength, there is *no* mention of sensory or reflex loss in these records, and, therefore, these records do not support a finding of motor loss, at least as that term is defined in the Listing.  (AR 670-76.)

As a result, plaintiff can only point to an isolated May 2018 medical note describing muscle weakness and reflex loss in his left arm.  While this note certainly post-dates records from 2015 through 2017 that describe no motor loss, it is insufficient to demonstrate that Swanson's spine disorder had progressed to the point where in 2018, he met Listing 1.04(A).  To the contrary, this isolated note wholly fails to establish motor loss "over a period of time," particularly in light of the lack of evidence "of ongoing management and evaluation."  20 C.F.R. 404, Subpt. P, App. 1.00(d).  Moreover, unlike the ALJ in the case cited on by plaintiff in his reply brief, *Kastner v. Astrue*, 697 F.3d 642, 647-48 (7th Cir. 2012), the ALJ here did *not* rely on an isolated, early piece of evidence in finding that the plaintiff failed to meet the Listing.

Instead, other than the one-off, May 2018 record, the other evidence in the record does not support a finding of muscle weakness, coupled with loss in reflexes or senses, to satisfy the motor loss element of Listing 1.04(A).  An ALJ " is not required to mention every piece of evidence," but instead "must provide an 'accurate and logical bridge' between

---

[5] Defendant, in his opposition, is puzzled by plaintiff's reliance on evidence of motor loss in his arms, but the Listing is not limited to lower back pain, and there is evidence in the record, as the ALJ acknowledged, of "thoracic degenerative disk disease."  (AR 22.)

the evidence and the conclusion." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *see also Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir.2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.).  The court is satisfied that the ALJ met this standard here.

Finally, the ALJ further relied on the State Agency medical consultant's opinions that Swanson did not have any impairment that met or medically equaled a listed impairment.  (AR 19; *see also* AR 80-83, 101-06.)  No other medical opinion contradicted this conclusion.  As such, the ALJ was entitled to place significant weight on this finding. *See Chapman v. Berryhill*, No. 17-cv-949-slc, 2018 WL 6804483, at *4 (W.D. Wis. Dec. 27, 2018).  For all these reasons, the court rejects plaintiff's assertion that he met the requirements of Listing 1.04(A) over the ALJ's well-supported finding to the contrary.

## II. RFC

Plaintiff next faults the ALJ for failing to credit his testimony that he could not sit for more than 1.5 hours before his pain becomes intolerable, making him incapable of sedentary work.  In his decision, the ALJ acknowledged plaintiff's written self-reports, which claimed that he could not sit or stand for more than 20 to 30 minutes before needing to change positions, as well as plaintiff's testimony at the hearing that he could sit with discomfort for an hour and for an hour and a half maximum.  (AR 19.)

As an initial matter, the record here is less than clear that a sedentary exertion level job would *not* accommodate plaintiff's own account that he cannot sit for longer than 1.5 hours at a time.  While sedentary work is primarily performed while sitting -- and the

10

regulation states that on average a person would be sitting six hours in an eight-hour work day (SSR 83-10) -- there is no requirement that one sit for six hours uninterrupted.  If anything, this would be counter to other language in the regulation that a sedentary job also requires "a certain amount of walking and standing."  (*Id.*)  Moreover, plaintiff testified at the hearing that after he has been sitting for a period of time, to relieve pain, he would either "stand up or lay down or bend."  (AR 47.)  However, plaintiff stopped short of saying how long he must be in an alternative position before returning to sitting.

Next, in his reply brief, plaintiff represents the vocational expert "testified that for an individual to perform the listed DOT jobs, that individual would be required to maintain a seated position for at least four hours at a time."  (Pl.'s Reply (dkt. #13) 4 (citing AR 65-73).)  In support, however, plaintiff cites the page numbers for the VE's *entire* testimony, and the court's review of the VE's testimony discloses *nothing* about a sedentary job requiring four *uninterrupted* hours of sitting.  Again, to the contrary, in an exchange with the ALJ about the availability of a sit-stand option, the VE actually responded:

> These jobs are performed in a seated position[,] per the definition of sedentary work.  Within the DOT, an individual would need to sit up to six hours per day.  So if an individual was unable to sit and perform their job for half an hour out of every hour, there might be an accommodation as far as like a desk that would raise or lower.  But, again, these jobs are mainly performed in a seated position, so that type of movement between sitting and standing would preclude those jobs.

(AR 69.)   If anything, this testimony supports the ALJ's finding that the identified sedentary job *could* accommodate a person needing to change positions every half hour.

Finally, even assuming that the sedentary exertional level work could not accommodate the amount of non-sitting time plaintiff claims he needs, the ALJ provided an adequate explanation for discounting his self-serving account as to the intensity and limiting effects of his symptoms.  While plaintiff's criticism of the ALJ's reliance on his ability to engage in 60-minutes of therapy in particular has merit, the ALJ provided other reasons to justify his discrediting plaintiff's claim, including medical records describing:  his ability to ambulate and function; the conservative nature of his treatment history; and activities that *exceed* the sedentary exertion level (like vacuuming, doing laundry, home maintenance, yard work, among others).   (AR 23-25.)   At minimum, this recitation provides a logical bridge to support the ALJ's rejection of plaintiff's claim that he needed to lie down frequently.  As such, the court rejects this basis for remand as well.

## ORDER

IT IS ORDERED that:

1)  The decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff Christopher M. Swanson's application for disability and disability insurance benefits and supplemental security income is AFFIRMED.

2)  The clerk's office is directed to enter judgment in defendant's favor.

Entered this 23rd day of November, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

12